# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEX PALMERIN,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>Defendant. | Case No. CV 17-6742-AFM<br><br>**MEMORANDUM OPINION AND ORDER AFFIRMING THE DECISION OF THE COMMISSIONER** |

Plaintiff seeks review of the Commissioner's final decision denying his application for disability insurance benefits. In accordance with the Court's case management order, the parties have filed memorandum briefs addressing the merits of the disputed issues. This matter now is ready for decision.

## BACKGROUND

On March 14, 2014, Plaintiff applied for disability insurance benefits, alleging that he became disabled and unable to work in August 2011. Plaintiff's claim was denied. (Administrative Record ("AR") 78-81, 158-161.) An Administrative Law Judge ("ALJ") conducted a hearing on November 25, 2015, at which Plaintiff, his attorney, and Vocational Expert ("VE") were present. (AR 39-66.) After the hearing, the ALJ further developed the record by obtaining the opinion of a medical expert

("ME"). The ME's opinion was proffered to Plaintiff's attorney for objection, but none was made. (AR 21, 218-220, 1268-1290).

The ALJ issued a decision on March 25, 2016, finding that Plaintiff suffered from the following severe impairments: lumbar spine disorder status post fusion; thoracic spine spondylosis, sprain or strain; cervical spine disorder status post anterior discectomy and fusion degenerative disc disease, sprain or strain; and right lower extremity radiculopathy. (AR 23-24.) The ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work with a restriction that he could "occasionally perform postural limitations." (AR 26.) The ALJ concluded that Plaintiff's RFC did not preclude him from performing jobs that exist in significant numbers in the national economy. Accordingly, the ALJ found Plaintiff was not disabled at any time through the date of the ALJ's decision. (AR 26-38.) The Appeals Council denied review, thereby rendering the ALJ's decision the final decision of the Commissioner. (AR 2-7.)

## DISPUTED ISSUE

Whether the ALJ properly evaluated Plaintiff's subjective complaints.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *See Treichler v. Commissioner of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). Substantial evidence means "more than a mere scintilla" but less than a preponderance. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

# DISCUSSION

Plaintiff contends that the ALJ failed to provide clear and convincing reasons for discounting his testimony regarding his pain and limitations. (ECF No. 21 at 2-12.)

**1. Plaintiff's Testimony**

Plaintiff testified that he injured his back while performing construction work on August 28, 2011. (AR 47-48.) He underwent back surgery in October 2014.[1] Plaintiff also underwent neck surgery in January 2015. After the surgery, his pain decreased, but was "still there." (AR 50.) Plaintiff's back "cracks" or "pops" – that is, it makes a noise – when he lifts up his right leg. (AR 50-51, 56.)

When his pain becomes "very strong," Plaintiff takes Norco, a narcotic pain medication. He takes one-and-a-half to two pills a day. In an ordinary week, Plaintiff takes three to five pills. (AR 51-52.) The medication "sometimes" alleviates Plaintiff's pain. (AR 54.) The medication also makes Plaintiff dizzy or sleepy. (AR 52, 59-60.) Plaintiff's neck is "tight" or "stiff." (AR 53.)

Plaintiff "struggles" to get up in the morning, so his wife helps him out of bed. At home, Plaintiff helps his wife do the dishes. He is able to sweep, but does not mop. Plaintiff cannot bend down to make the bed. Plaintiff is able to drive, and drives his children to and from school every day. He drives about a half hour a day. Plaintiff has difficulty getting in and out of the car due to pain. (AR 53-55.)

Plaintiff has trouble sitting for prolonged periods of time because of pain in his lower back that radiates down the muscle of his right leg. He estimated that he could sit for 10 to 15 minutes before needing to stand up. Plaintiff also has problems being on his feet for long periods of time. Plaintiff estimated that he could stand for 20 to 25 minutes at a time. (AR 56-58.) He is unable to lift or carry more than a gallon of milk without pain. (AR 58.)

---

[1] Although there is no direct evidence regarding this surgery, the record indicates that Plaintiff's back surgery occurred in July 2014. (*See* AR 842.)

3

Approximately twice a week, Plaintiff requires his wife's help to wash his back, and approximately three or four times a week, Plaintiff requires help putting on his shoes. (AR 58-59.) He lies down three or four times a day for about 10 minutes. (AR 59.)

About six months after he stopped working, Plaintiff began experiencing difficulty concentrating. As he explained, "I think a lot. I'm very distressed." (AR 59.) The pain makes him "very uncomfortable," and causes a lack of concentration. (AR 59-60.)

**2. Law Regarding Consideration of A Claimant's Subjective Symptoms**

Where, as here, a claimant has presented evidence of an underlying impairment and the record is devoid of affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's subjective symptom statements must be "specific, clear and convincing." *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014) (quoting *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012)). "General findings [regarding a claimant's credibility] are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Burrell*, 775 F.3d at 1138 (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)). The ALJ's findings "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 345-346 (9th Cir. 1991) (en banc)).

Factors the ALJ may consider when making such determinations include the objective medical evidence, the claimant's treatment history, the claimant's daily activities, and inconsistencies in testimony. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *see generally* 20 C.F.R. §§ 404.1529(a), 416.929(a) (explaining how pain and other symptoms are evaluated). "When evidence reasonably supports either confirming or

reversing the ALJ's decision, [the court] may not substitute [its] judgment for that of the ALJ." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004).

The Commissioner does not allege that there was affirmative evidence of malingering, and therefore the ALJ was required to articulate specific, clear and convincing reasons for rejecting the alleged severity of Plaintiff's subjective symptoms.

**3. The ALJ's Decision**

The ALJ provided the following reasons for finding Plaintiff's subjective complaints not fully credible.

**a. Lack of Objective Medical Evidence**

The ALJ summarized the objective medical evidence, noting that from 2011 through 2013, Plaintiff's primary treating physician, Rahil Khan, M.D., reported positive findings of tenderness and decreased range of motion in the cervical and thoracic spine as well as right hand pain and tenderness. (AR 27, 221-237, 264-287, 347, 475-483, 491, 502.) During the same period, however, Plaintiff's neurological examinations were generally normal. (AR 27, 381-382, 395-399, 412-416, 424-428, 463-464, 470-471.)

The ALJ remarked that objective diagnostic testing from 2011 through 2013 did not reveal acute findings. (AR 27-28.) For example, a 2011 MRI from shortly after Plaintiff's injury showed only diffuse disc extrusion and protrusion with no impingement on the spinal nerves. (AR 27, 248-249.) An MRI of Plaintiff's cervical spine revealed some degenerative changes, but no evidence of stenosis. (AR 27, 254-255.) Similarly, August 2012 MRIs showed degenerative changes and extrusion of nucleus pulposus, but no disc bulge, herniation or stenosis. (AR 28, 240-243.) Findings from a November 2012 nerve conduction study of Plaintiff's upper extremities revealed only slight prolonged distal latencies of the median nerves, but these were probably within normal limits. (AR 27-28, 376.) Nerve conduction studies

of Plaintiff's lower extremities were essentially normal, although Dr. Jacobo W. Chodakiewitz remarked that Plaintiff's cooperation with the study was "suboptimal." (AR 28, 377.)

The ALJ noted that the records from 2014 include positive findings of back tenderness and decreased range of motion, and one positive leg-raising test. Neurological examinations, however, continued to be normal. (AR 28, 313, 319, 325, 327, 333, 338, 343.) In the first half of 2014, Dr. Khan's notes reflect that Plaintiff reported decreased pain with the use of medication and injections, and that objective clinical exams confirmed some improvement in tenderness and weakness. (AR 28, 313-314, 319-320, 324, 328-329, 334, 338, 343.) Nevertheless, in June 2014, it was recommended that Plaintiff undergo a lumbar decompression and fusion. (AR 28, 333.) Yet, during the same period of time, Plaintiff's primary care providers at Kaiser Permanente found him to be neurologically intact, with a normal gait and with no objective findings of back tenderness. (AR 28, 528, 536.)

Although the record lacks direct records of the surgery, Plaintiff underwent surgical fusion of his lumbar spine in July 2014. (AR 28, 842.) In February 2015, Plaintiff underwent a cervical anterior discectomy and fusion. (AR 29, 506-508.) Dr. Moshe Wilker's post-operative treatment records indicate that Plaintiff was doing well, and reveal normal neurological functions as well as full range of motion and strength in his upper extremities. (AR 29, 506.)

A May 2015 CT scan of Plaintiff's lumbar spine showed disc protrusions, mild hypertrophic facet changes, and no evidence of spinal stenosis. (AR 29, 511-512.) An x-ray image of Plaintiff's lumbar spine from the same date showed similar findings. (AR 513.)

The ALJ found that the objective medical evidence did not support the extent and severity of Plaintiff's alleged symptoms. (AR 27-30.) Plaintiff does not contend, and the Court's review does not suggest, that the ALJ's characterization of the objective medical evidence as lacking was inaccurate or incomplete. Rather, Plaintiff

6

argues that the ALJ erred because she relied *solely* upon the lack of objective evidence. (ECF No. 21 at 7-8.) So long as it was not the sole basis for her credibility determination, the ALJ was entitled to rely upon the lack of objective medical evidence to discredit Plaintiff's subjective complaints. *See Burch*, 400 F.3d at 681 ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects."); *Morgan v. Comm'r of Soc. Sec. Admin.,* 169 F.3d 595, 600 (9th Cir. 1999) (conflicts between a claimant's testimony and the objective medical evidence in the record can undermine a claimant's credibility). Contrary to Plaintiff's argument, the ALJ provided the following additional reasons for discrediting Plaintiff's testimony.

### b. Plaintiff's Complaints Were Inconsistent with His Medical Treatment

The ALJ concluded that Plaintiff's failure to seek post-operative treatment was inconsistent with the alleged severity of Plaintiff's functional limitations and diminished the credibility of Plaintiff's allegations. The record indicated that Plaintiff's treatment had been generally successful in controlling his symptoms, and the ALJ specifically pointed to the lack of treatment after Plaintiff's February 2015 surgery. (AR 30.)

The ALJ's characterization of Plaintiff's treatment is borne out by the record. As the ALJ noted, after reviewing the entire record, the medical expert, Eric D. Schmitter, M.D., stated that it was devoid of any evidence that Plaintiff sought follow-up treatment after either of his two surgeries. (AR 29, 1288-1290.)

Plaintiff argues that the ALJ erred by relying upon Plaintiff's conservative treatment because surgery is not conservative treatment and because the ALJ failed

to point to non-conservative treatments that were available. (ECF No. 21 at 11.) Plaintiff's argument is based upon a mischaracterization of the ALJ's decision. As discussed above, the ALJ found that Plaintiff's failure to seek treatment after his surgeries suggested that he had obtained substantial relief and that his allegations of disabling pain and limitations were not credible. Where a claimant complains about debilitating pain, an unexplained, or inadequately explained, failure to seek treatment may be the basis for finding the complaint unjustified or exaggerated. *Molina*, 674 F.3d at 1112; *Orn*, 495 F.3d at 638. Plaintiff does not contend, and the record does not suggest, that his failure to seek treatment was due to his inability to afford it. Accordingly, Plaintiff's lack of post-surgery treatment was a proper basis for the ALJ's credibility determination. *See Cattano v. Berryhill*, 686 Fed. App'x 408, 411 (9th Cir. 2017) (ALJ properly found claimant's claims regarding the severity of his symptoms were "undermined by his post-surgery recoveries and his use of only over-the-counter Naprosyn and Aleve for relief").

### c. Plaintiff's Complaints Were Inconsistent with Medical Opinions

The ALJ concluded that Plaintiff's testimony was contrary to the medical opinions regarding Plaintiff's functional capacity. (AR 28-29.) Specifically, the ALJ noted that Dr. Birgit Siekerkotte performed a consultative examination of Plaintiff in February 2013. After examining Plaintiff, Dr. Siekerkotte diagnosed Plaintiff with low back pain, neck pain, and difficulty concentrating. Dr. Siekerkotte opined that Plaintiff could perform work in the medium exertional range, except that he could occasionally climb and crawl. (AR 28, 260-263.)

The ALJ also noted Plaintiff's June 2014 consultative examination by Dr. Richard Kim, who diagnosed Plaintiff with lumbosacral spine degenerative disc disease and spondylosis; thoracic spine spondylosis, sprain or strain; cervical spine spondylosis, degenerative disc disease, sprain or strain; and right lower extremity radiculopathy. Dr. Kim opined that Plaintiff could sit for six hours in an eight-hour workday; could stand or walk for six hours in an eight-hour work day; was limited to

occasional climbing, stooping, kneeling, crouching, crawling and balancing; and was limited to occasional pushing and pulling with his right lower extremity. (AR 29, 349-356.)

The ALJ also found significant the June 2014 opinion of the State agency medical consultant who considered all of the available medical evidence and, like Dr. Kim, determined that Plaintiff could perform a light range of work with a limitation to occasional postural activities. (AR 29, 68-77.)

Finally, the ALJ discussed the February 2016 opinion of medical expert Eric D. Schmitter, M.D., a Board certified orthopedic surgeon. Dr. Schmitter reviewed the entire record and opined that Plaintiff could perform a limited range of light work. (AR 29, 1282-1290.)

The ALJ could properly consider the inconsistency between Plaintiff's alleged functional limitations – for example, his testimony that he was unable to sit for more than 15 minutes or stand for more than 25 minutes – and the physicians' opinions regarding Plaintiff's functional capacity. *See Molina*, 674 F.3d at 1113 (ALJ's credibility determination supported by finding that claimant's allegations that she was disabled by anxiety were contradicted by physicians' conclusions that claimant's anxiety disorder was not severe and that she was able to control it with medication and self-calming techniques).

### d. Daily Activities

The ALJ found that Plaintiff's daily activities were not limited to the extent expected of one suffering the type of disabling symptoms and limitations alleged by Plaintiff. In particular, the ALJ noted Plaintiff's acknowledgment that he drives for thirty minutes a day, and was able to do the dishes and sweep as well as take care of his personal needs. (AR 30, 260.) The ALJ concluded that Plaintiff's ability to engage in these activities undermined his allegations of disabling functional limitations. (AR 30.)

///

Plaintiff argues that the ALJ erred by relying upon his performance of "sporadic daily activities" and by failing to identify specific daily activities that she believed were inconsistent with his allegations of pain or other symptoms. In addition, Plaintiff contends that the ALJ erred because she failed to explain how a specific activity demonstrated that Plaintiff was capable of sustaining work activity. (ECF No. 21 at 9-11.)

As explained by the Ninth Circuit:

> [w]hile a claimant need not "vegetate in a dark room" in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting. Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.

*Molina*, 674 F.3d at 1112–1113 (internal quotation marks and citations omitted).

The ALJ did not conclude that Plaintiff's daily activities demonstrated that he was capable of performing work. Instead, the ALJ found that Plaintiff's admitted daily activities were inconsistent with the level of pain and limitations to which he testified.

Nevertheless, even assuming that the ALJ improperly relied upon Plaintiff's daily activities in making her credibility determination, the error was harmless because the ALJ provided other legally sufficient reasons for that determination. *See Molina*, 674 F.3d at 1115 (where one or more reasons supporting ALJ's credibility analysis are invalid, error is harmless if ALJ provided other valid reasons supported by the record); *Batson*, 359 F.3d at 1197 (even if the record did not support one of the ALJ's stated reasons for disbelieving a claimant's testimony, the error was harmless where ALJ provided other valid bases for credibility determination).

///

**ORDER**

For the foregoing reasons, IT IS ORDERED that Judgment be entered affirming the decision of the Commissioner and dismissing this action with prejudice.

DATED: 6/29/18

ALEXANDER F. MacKINNON
UNITED STATES MAGISTRATE JUDGE